# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **GLORIA HACKMAN,** *Individually and on Behalf of the General Public*, 27 O. St., NW, Apt 212 Washington, D.C. 20001<br><br>**Plaintiff,**<br><br>v.<br><br>**ONE BRANDS, LLC, d/b/a/ Oh Yeah!,** 5400 West W.T. Harris Blvd., Suite L Charlotte, NC 28269<br><br>**Defendant.** | Case No. |

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1441 and 1446, Defendant One Brands, LLC, by counsel, hereby files its Notice of Removal of this action from the Superior Court for the District of Columbia to the United States District Court for the District of Columbia.

One Brands bases its removal on the following grounds:

1. On July 30, 2018, Plaintiff Gloria Hackman filed an action against One Brands in the Superior Court for the District of Columbia, captioned *Gloria Hackman, Individually and on Behalf of the General Public, v. One Brands, LLC, d/b/a Oh Yeah!*. It is docketed as Civil Action No. 2018 CA 005423 B. A copy of the complaint is included in Exhibit A.

2. Earlier this year, Ms. Hackman's lawyers filed suit against One Brands based on the same allegations included in Ms. Hackman's complaint. *See* U.S. District Court for the District of Columbia Case No. 18-cv-00767-RJL, Docket No. 1 (complaint). Like this suit, that earlier suit was baseless and preempted by federal law. One Brands removed that suit to this

Court and then moved to dismiss. The plaintiff in that suit (who, again, was represented by the same counsel that represent Ms. Hackman) did not respond, but rather voluntary dismissed the suit. *See id.* Docket No. 11 (voluntary dismissal).

3. One Brands was served with the complaint and summons in this case on August 13, 2018 and has timely filed this removal within thirty days in accordance with 28 U.S.C. § 1446(b)(3) ("[A] notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.").

4. Pursuant to 28 U.S.C. § 1446(a), a true and correct copy of the civil docket sheet, complaint, summons, civil information sheet, initial order, and Ms. Hackman's discovery requests are included in Exhibit A. One Brands has not received any other process, pleadings, or orders.

5. In accordance with 28 U.S.C. § 1446(d), One Brands is providing notice to Ms. Hackman through her attorneys of record and is filing a copy of this notice with the Superior Court for the District of Columbia.

**GROUNDS FOR REMOVAL**

**A. DIVERSITY JURISDICTION UNDER 28 U.S.C. § 1332(a)**

6. This court has jurisdiction over Ms. Hackman's complaint pursuant to 28 U.S.C. § 1332(a).

7. Ms. Hackman is a resident of the District of Columbia, Compl. ¶ 5, and thus a citizen of the District of Columbia for jurisdictional purposes. *Core VCT Plc. v. Hensely*, 59 F. Supp. 3d 123, 125 (D.D.C. 2014). One Brands is a Delaware corporation with its principal place

of business in North Carolina.  Compl. ¶ 6; Ex. B, David Ziegert Decl. ¶ 1.  There is thus complete diversity among the parties.  28 U.S.C. § 1332(a)(1).

8. The amount in controversy exceeds $75,000 for three independent reasons.  *See* 28 U.S.C. § 1332(a); 28 U.S.C. § 1446(c)(2)(A)(i).

9. *First*, the amount in controversy exceeds $75,000 due to the cost of the injunctive relief.  The amount in controversy in cases seeking equitable relief "may be measured either by the 'value of the right sought to be gained by the plaintiff or the cost of enforcing that right to the defendant.'"  *Comm. for GI Rights v. Callaway*, 518 F.2d 466, 472–73 (D.C. Cir. 1975).

10. Ms. Hackman alleges that One Brands violated the District of Columbia Consumer Protection Procedures Act (DCCPPA), D.C. Code § 28-3904 *et seq.*, based on the sale of its One Bars product.  Compl. ¶¶ 9–22; 31–34.  Ms. Hackman seeks, among other things, "injunctive relief."  Compl. ¶¶ 33–34.  In particular, she seeks an "injunction against [One Brands], including that [One Brands] be barred from selling One Bars in the District of Columbia until the front of One Bar labels give truthful information regarding the sugar content of the bars."  Compl. ¶ 34.

11. Although the allegations are baseless, for the reasons explained in the attached Declaration of David Ziegert (Exhibit B), complying with the requested injunction would cost One Brands over $1,000,000, which is significantly in excess of $75,000.[1]

   a. To comply with the requested injunction, One Brands would have to: (1) recall the One Bars currently for sale in the District of Columbia; and either

---

[1] One Brands does not concede that any injunction, let alone the requested injunction, is proper. It is nonetheless providing an estimate of the cost of the requested injunction for jurisdictional purposes.

      (2) redesign the packaging and marketing of One Bars to remove references to the bars' low sugar status; or (3) reformulate One Bars.

  b. Recalling the One Bars and associated advertising that has already been distributed in D.C. would cost approximately $10,000.

  c. Changing the formulation of One Bars would entail, for example: (1) $20,000 in product formulation and ingredient costs; (2) $90,000 for test runs of the reformulated products; and (3) $10,000 to implement new testing protocols.

  d. Changing the branding and marketing would involve, for example (1) design fees of approximately $20,000; (2) changing the printer cylinder at a cost of $2,000; (3) updating the One Bars website to remove references to the bars' low sugar content and health status, at a cost of approximately $2,500; (4) approximately $1,000,000 to destroy and recreate existing packaging; (5) conducting consumer attitude and usage surveys at a cost of approximately $30,000; (6) conducting consumer focus groups at a cost of approximately $20,000; and (7) advertising the new products at a cost of approximately $20,000.

12.   *Second*, the amount in controversy exceeds $75,000, if Plaintiff is successful in obtaining the attorneys' fees she seeks. Attorneys' fees are part of the amount in controversy when they are provided by statute. *Griffin v. Coastal Int'l Sec., Inc.*, No. CIV.A.06-2246 (CKK), 2007 WL 1601717, at *3 (D.D.C. June 4, 2007).

13.   Ms. Hackman is seeking "[r]easonable attorneys' fees," Compl. ¶¶ 33–34, which are provided by the DCCPPA, D.C. Code § 28-3905(k)(2)(B). If this case were litigated through trial, Ms. Hackman's attorneys' fees would far exceed $75,000. *See* 28 U.S.C. § 1446(c)(2)(B)

(amount in controversy determined by "preponderance of the evidence"). Fee awards under the DCCPPA are often calculated using the lodestar analysis. *See Beck v. Test Masters Educ. Servs., Inc.*, 73 F. Supp. 3d 12, 15–18 (D.D.C. 2014). To determine reasonable hourly rates for the lodestar analysis in the District of Columbia, courts generally use the *Laffey* index. *Id.* at 18. The current *Laffey* index provides that the average rate for an attorney with the experience of Ms. Hackman's lead attorney is $742 per hour. *See* http://www.laffeymatrix.com/see.html. Ms. Hackman's other two attorneys have an average rate of $658 per hour. *Id.*

14. If each lawyer worked just 40 hours on the case, the attorney's fees would surpass the $75,000 threshold. If the case were in fact litigated through document discovery, fact depositions, expert discovery, expert depositions, summary judgment, and trial, each lawyer could bill well in excess of 250 hours, which would generate over $500,000 in fees. *See* Declaration of Frank Volpe (Exhibit C).

15. *Third*, the amount in controversy exceeds $75,000 due to the punitive damages sought by Ms. Hackman. It "is clear that punitive damages should be considered in determining the jurisdictional amount in controversy." *Hartigh v. Latin*, 485 F.2d 1068, 1071–72 (D.C. Cir. 1973).

16. Ms. Hackman seeks, among other things, "punitive damages" for herself. Compl. ¶ 33. If this case were to be litigated through trial, it is more probable than not that Ms. Hackman would seek more than $75,000 in punitive damages. *See* 28 U.S.C. § 1446(c)(2)(B) (preponderance of the evidence standard). This Court has credited punitive damages valuations that double the value of the relief sought. *See Lavelle v. State Farm Mut. Auto. Ins. Co.*, 235 F. Supp. 3d 217, 223 (D.D.C. 2017) (punitive damages for jurisdictional purposes could be 100% of other damages); *see also Dist. Cablevision Ltd. P'ship v. Bassin*, 828 A.2d 714, 717–18 (D.C.

2003) (noting that punitive damages initially awarded by the jury in a DCCPPA case were jut under 100% of other damages). Here, the value of the relief sought is approximately $900,000. This means that—for purposes of this jurisdictional inquiry—Ms. Hackman's unstated (and baseless) punitive damages request is as high as $900,000.

### B. CAFA DIVERSITY JURISDICTION UNDER 28 U.S.C. § 1332(d)

17. This court also has jurisdiction over Ms. Hackman's complaint pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d).

18. Ms. Hackman is a resident of the District of Columbia, Compl. ¶ 5, and thus a citizen of the District of Columbia for jurisdictional purposes. *Core VCT Plc.*, 59 F. Supp. 3d at 125. One Brands is a Delaware corporation with its principal place of business in North Carolina. Compl. ¶ 6; Ex. B, Ziegert Decl. ¶ 1. There is thus minimal diversity under CAFA. *See* 28 U.S.C. § 1332(d)(2)(A).

19. Ms. Hackman's suit is brought "on behalf of the general public" in the District of Columbia, Compl. Opening & ¶ 34, and more than 100 D.C. consumers purchased One Bars during the relevant time period and are therefore part of the proposed class. Ziegert Decl. ¶ 6; *See* 28 U.S.C. 1332(d)(5)(B).

20. Ms. Hackman, in an apparent effort to avoid federal jurisdiction, disclaims any reliance on Rule 23 and claims to bring this case only as a representative action "on behalf of the general public." Compl. Opening & ¶ 34. But she also seeks injunctive relief for the entire general public of D.C. *Id.* Taking this representative claim at face value, the injunctive relief Ms. Hackman seeks would be on behalf of any other persons in the District of Columbia, including the persons who purchased the 12,000 One Bars between August 13, 2015 and August 13, 2018.

21. The D.C. Court of Appeals has held that any DCCPA action not brought under Superior Court Civil Rule 23 (which governs class actions) would raise "grave due process concerns," since it would bind[] absent class members who do not affirmatively distance themselves from the suit." *Rotunda v. Marriott Int'l, Inc.*, 123 A.3d 980, 986 (D.C. 2015). Although *Rotunda* concerned an action for damages, Ms. Hackman's request for injunctive relief on behalf of other persons in the District of Columbia (including the persons who purchased the 12,000 One Bars) nonetheless would raise the same "grave due process concerns" identified in *Rotunda*. This is because Ms. Hackman's suit would bar absent class members from later obtaining damages (or any other relief), because "for the purposes of claim preclusion, the legal theory upon which the plaintiff relies is irrelevant; rather, the relevant inquiry is whether the plaintiff's claims arise out of the same 'common nucleus of facts'" as the previous litigation. *Youngin's Auto Body v. D.C.*, 775 F. Supp. 2d 1, 7 (D.D.C. 2011); *see also Sorenson Commc'ns, LLC v. Fed. Commc'ns Comm'n*, 897 F.3d 214, 226 (D.C. Cir. 2018) (a litigant cannot avoid claim preclusion by changing the "the legal theory upon which [he or she] relies"); FRCP 2 ("There is one form of action—the civil action").

22. Ms. Hackman's suit therefore must also proceed under Superior Court Civil Rule 23 (or Rule 23 of the Federal Rules of Civil Procedure if this case proceeds in federal court) because she seeks any relief at all on behalf of the general public. Otherwise absent class members would be bound without the procedural protections of Rule 23, and they would be bound by Ms. Hackman (and her lawyers') decision to waive any claim to damages. This case is therefore subject to CAFA.

23. The amount in controversy also exceeds $5,000,000. *See* 28 U.S.C. § 1332(d)(2).

24.     To determine the amount in controversy, "the claims of the individual class members shall be aggregated."  *See* 28 U.S.C. § 1332(d)(6).

25.     While Plaintiff attempts to waive damages for the remainder of the general public on whose behalf she sues, the Supreme Court has held that a person who files a purported class action cannot "legally bind members of the proposed class before the class certified."  *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 593 (2013).  Since Ms. Hackman's waiver of damages "does not bind anyone but [her]self," she "has not reduced the value of the putative class members' claims."  *Id.*

26.     Accordingly, the amount in controversy must be calculated based on the 12,000 One Bars consumer transactions between August 13, 2015 and August 13, 2018.  When the 12,000 alleged violations of the DCCPPA are combined with the DCCPPA's $1,500 statutory damage provision, the damages well exceed the $5,000,000 threshold required by CAFA.

27.     Any other result would permit Ms. Hackman to both dodge clear CAFA jurisdiction and forfeit each of the other class member's cause of action for $1,500 in damages (all in an effort to avoid federal court and the quick preemption-based dismissal she knows she will find there).

**WHEREFORE**, One Brands respectfully requests that this action be removed to the United States District Court for the District of Columbia.

Dated: September 7, 2018

                                         Respectfully submitted,

                                         <u>/s/ Frank R. Volpe</u>
                                         Frank R. Volpe (D.C. Bar No. 458791)
                                         Benjamin M. Mundel (D.C. Bar No. 1018114)
                                         SIDLEY AUSTIN LLP
                                         1501 K Street, N.W.
                                         Washington, DC 20005
                                         T: (202) 736-8000
                                         F: (202: 736-8711
                                         bmundel@sidley.com

                                         *Counsel for Defendant*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on September 7, 2018, I caused a copy of the foregoing Notice of Removal to be served via Federal Express on the following Counsel:

Nicholas A. Migliaccio
D.C. Bar No. 484366
Jason S. Rathod
D.C. Bar No. 1000882
Esfand Y. Nafisi
D.C. Bar No. 1029770
MIGLIACCIO & RATHOD LLP
412 H. St., NE
Suite 302
Washington, DC 20002
T: (202) 470-3520
F: (202) 800-2730
nmigliaccio@classlawdc.com

*Counsel for Plaintiff*

                                              */s/ Frank R. Volpe*
                                              Frank R. Volpe