# UNITED STATES DISTRICT COURT
# DISTRICT OF COLUMBIA

| | |
|---|---|
| GLORIA HACKMAN,<br>Individually and on behalf of the<br>General Public,<br><br>        Plaintiff<br><br>    v.<br><br>ONE BRANDS, LLC, d/b/a Oh Yeah!<br><br>        Defendant. | Case Number: 18-cv-2101-CKK<br><br>The Honorable Colleen Kollar-Kotelly |

## **<u>PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS</u>**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

LEGAL STANDARD.......................................................................................................... 3

ARGUMENT ...................................................................................................................... 4

I.    Because Plaintiff's Claim Does Not Arise From Defendant's Nutrition Labels, it is Not Preempted by the Federal Nutrition Labeling and Education Act. ................................................. 4

   A.    Federal Labeling Requirements Do Not Regulate—And Do Not Preempt—the Misrepresentations on Defendant's Websites. ........................................................... 5

   B.    Plaintiff is not required to allege strict adherence to FDA Testing regulation at the Pleading Stage. ................................................................................................ 6

   C.    Plaintiff has standing to challenge NSF Certification......................................... 9

      1.   Background on Tester standing under the DCCPPA......................................... 9

      2.   Plaintiff has adequately pleaded an injury-in-fact........................................... 12

   D.    Plaintiff's Claims under the DCCPPA are well pleaded. .................................. 13

CONCLUSION.................................................................................................................. 15

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ................................................................. 3

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007)............................................ 3

*Campbell v. Nat'l Union Fire Ins. Co.*, 130 F. Supp 3d 236 (D.D.C. 2015)............................. 12

*City of Moundridge v. Exxon Mobil Corp.*, 250 F.R.D. 1, 6 (D.D.C. 2008)................................ 15

*Florida Lime & Avocado Growers v. Paul*, 373 U.S. 144 (1963) .................................... 5

*Frese v. City Segway Tours of Wash., DC, LLC*, 249 F. Supp 3d 230, 235 (D.D.C. 2017) ........... 4

*Grayson v. AT&T Corp.*, 15 A. 3d 219 (D.C. 2011)........................................... 9, 10, 11

*Gubala v. CVS Pharm.*, 2016 U.S. Dist. LEXIS 32759 (N.D. Ill. Mar. 15, 2016)........................ 7

*Harrison v. Rubin*, 174 F.3d 249, 252 (D.C. Cir. 1999) ............................................. 15

*Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372 (1982) ....................................... 12

*Hesano v. Iovate Health Scis., Inc.*, 2014 U.S. Dist. LEXIS 5924 (S.D. Cal. Jan. 15, 2014) ........ 5

*In re Herbal Supplements Mktg. & Sales Practices Litig.*, 2017 U.S. Dist. LEXIS 76207

(N.D. Ill. May 19, 2017) ........................................................................ 7

*In re: Whole Foods Market, Inc.*, 163 F. Supp. 3d 385 (W. D. Tex. 2016)................................... 8

*Margolis v. U-Haul Int'l, Inc.* 2009 D.C. Super. LEXIS 8 (D.C. Super. Ct. 2009) ...................... 9

*Markowicz v.Johnson*, 206 F. Supp. 3d 158, 169 (D.D.C. 2016) ...................................... 4

*Material Supply Int'l, Inc. v. Sunmatch Indus. Co.*, 146 F.3d 983, 991 (D.C. Cir. 1998)............ 15

*McFadden v. Wash. Metro. Area Transit Auth.*, 168 F. Supp. 3d 100, 105 (D.D.C. 2016) ......... 14

*McMullen v. Synchrony Bank*, 164 F. Supp. 3d 77, 95 (D.D.C. 2016)........................................ 4

*Pearson v. Chung*, 961 A.2d 1067 (D.C. 2008)........................................................ 12

*Rudder v. Williams*, 666 F.3d 790, 794  (D.C. Cir. 2012) .......................................... 3

*Sciortino v. PepsiCo, Inc.*, 108 F. Supp. 3d 780, 807 (N.D. Cal. 2015)......................... 5

*Sickle v. Torres Advanced Enter. Sols., LLC*, 884 F. 3d. 338 (DC Cir. 2018)............................ 4

*Sissel v. U.S. Dep't of Health & Human Servs.*, 760 F.3d 1, 4 (D.C. Cir. 2014)........................... 3

*Smith v. Allmax Nutrition, Inc.*, 2015 U.S. Dist. LEXIS 1717897 (E.D. Cal. Dec. 24, 2015) ....... 8

*Townsend v. United States*, 236 F. Supp. 3d 280, 298 (D.D.C. 2017)........................................ 3

*United States v. Windsor*, 133 S. Ct. 2675 (2013) ....................................................... 11

*Wyeth v, Levine*, 555 U.S. 555, 565 (2009) ........................................................ 4

*Zuckman v. Monster Bev. Corp.*, 2016 D.C. Super. LEXIS 10 (D.C. Super. Ct. Aug. 12, 2016) 12

**Statutes**

21 U.S.C. § 343-1 ............................................................................................................. 5

21 U.S.C. § 343-1(a) ......................................................................................................... 6

21 U.S.C. § 343-1(a)-(e) ................................................................................................... 6

D.C. § 28-3901(b) ............................................................................................................ 14

D.C. Code § 28-3901 ....................................................................................................... 14

D.C. Code § 28-3901(c) ............................................................................................. 12, 13

D.C. Code § 28-3905 ......................................................................................................... 1

D.C. Code § 28-3905 (1981 Ed.) ..................................................................................... 11

D.C. Code § 28-3905 (k)(2001) (2001 Ed.) .................................................................... 11

D.C. Code § 3904 ............................................................................................................. 15

## INTRODUCTION

This case arises out of Defendant One Brands, LLC's violations of the District of Columbia Consumer Protection Procedures Act ("CPPA"), D.C. Code § 28-3905 *et seq*. Plaintiff Gloria Hackman, a nurse and public health advocate, alleges that Defendant deceptively marketed its One Bar protein bars by making material misrepresentations and omissions on One Brands' website and on the front of each One Bar label. Compl. ¶ 30 a-f.  Marketed to consumers seeking low-sugar protein bars, each One Bar's label prominently states that the bar within contains only one gram of sugar. *Id.* at ¶ 10. Low-sugar content is also the central marketing focus of the One Bar websites. *Id.* ¶¶ 11-16. Laboratory testing performed for Plaintiff found that Defendant's One Bars actually contain *nine to sixteen times as much sugar* as Defendant represents on its labeling, packaging, and website. *Id.* ¶ 18.

Defendant does not argue that if what Plaintiff alleges is true, then Plaintiff has failed to state a claim. Rather, Defendant argues that Plaintiff's claim about sugar content is preempted because Plaintiff failed to test a 12-bar sample in conformance with FDA labeling requirements. This argument conflates Rule 8's pleading requirements with the requirements an ultimate determination on the merits. Here, Plaintiff's testing of two One Bars found *nine to sixteen times* as much sugar in the products as Defendant represents, strongly supporting Plaintiff's claim that Defendant grossly misrepresents the sugar content of its One Bars. Moreover, Defendant's labeling preemption argument does not reach—and federal labeling law does not preempt— claims arising from misrepresentations and omissions on Defendant's website (i.e., not the label).

## BACKGROUND

Plaintiff Gloria Hackman is an adult resident of the District of Columbia, a consumer, and a public health and consumer watchdog in the District. Compl. ¶ 5. On May 17, 2018 Plaintiff Hackman purchased one Birthday Cake One Bar and one Almond Bliss One Bar from

Harris Teeter #352 located at 1201 First St. NE, Washington D.C., 20002, for $4.00. *Id.* ¶ 25. One Brands manufactures and distributes products through the trade names "Oh Yeah!" and "One" and includes a line of nutrition bars known as "One Bars." *Id.* ¶ 7. The One Bar line of products includes at least the following flavors: Almond Bliss, Birthday Cake, Blueberry Cobbler, Chocolate Brownie, Chocolate Chip Cookie Dough, Cinnamon Roll, Cookies & Creme, Lemon Cake, Maple Glazed Doughnut, Peanut Butter Chocolate Cake, Peanut Butter Pie, and Salted Caramel (all One Bar varieties referred to collectively herein as the "Products"). *Id.* ¶ 7.

According to One Brands' website, the One Bar contains "20 grams of protein and only 1 gram of sugar delivered in deliciously decadent too-good-to-be-true flavors," making it "the protein bar you didn't think was possible." *Id.* ¶ 11. One Brands states on its site that the One Bar's low sugar content and high protein content makes it ⋯the perfect healthy meal replacement bar." *Id.* ¶ 11. With respect to the Chocolate Brownie One Bar, One Brands represents that the "decadent, cocoa-infused bar with 20 grams of protein and only 1 gram of sugar" is "the perfect reward for any workout, whether it's in the weight room or in the board room." *Id.* ¶ 13. Defendant repeats these representations in some form about about each of the Products: "with just 1 gram of sugar, you can celebrate [by eating a Birthday Cake One Bar] morning, noon or night, any day you want."  *Id.* ¶ 14. One Brands represents that the One Bars are the perfect complement to sedentary office work, exercise at the gym, or "just because." *Id.* ¶ 15.

One Brands also suggests that the One Bars are certified by NSF, "The Public Health and Safety Organization." *Id.* ¶ 17. One Brands represents that it participates in the "NSF Certified for Sport Program," which "certifies that what is on the label is in the [One Bars .]" *Id.* ¶ 17.  One Brands further states that its NSF testing serves to "verify label claims against product

contents," and that "NSF helps establish credibility and provides the consumer assurance through the (sic) vigorous laboratory testing." *Id.* ¶ 17.

Independent laboratory testing completed at the direction of Ms. Hackman revealed that the two One Bars tested contained from approximately 900% - 1600% more sugar than the "1 gram of sugar" represented prominently on the One Bar's label and in One Brand's advertising and promotional materials. *Id.* ¶ 18. Specifically, the Almond Bliss One Bar tested contained more than 9 grams of sugar, and the Birthday Cake One Bar tested contained more than 16 grams of sugar. *Id.* ¶ 18. To confirm that the testing was accurate, Ms. Hackman also purchased and tested a protein bar from a One Brands competitor and found that that bar—the S'mores Questbar—contained .5 grams of sugar—half of the amount advertised on its label. *Id.* ¶ 19.

## LEGAL STANDARD

To overcome a motion to dismiss under Rule 12(b)(6), a "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Woods v. Moss*, 134 S. Ct. 2056, 2067 (2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). For Plaintiff's claim to be facially plausible, Plaintiff must plead factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007); *Rudder v. Williams*, 666 F.3d 790, 794  (D.C. Cir. 2012)).

In contrast to Defendant's suggested interpretation (Def.'s Brief 8-9), factual allegations establishing liability with 100% certainty are not required to withstand a Rule 12(b)(6) motion. *Twombly*, 550 U.S. at 555; *Townsend v. United States*, 236 F. Supp. 3d 280, 298 (D.D.C. 2017). A complaint need only contain "a short and plan statement of the claim" in order to give the defendant fair notice of the claim and the grounds upon which it rests. Fed. R. Civ. P. 8(a)(2).

Furthermore, the "court assume[s] the truth of all well-pleaded factual allegations in the complaint and construes reasonable inferences from those allegations in the plaintiff's favor." *Sissel v. U.S. Dep't of Health & Human Servs.*, 760 F.3d 1, 4 (D.C. Cir. 2014). Plaintiff's allegations should not be tested on her likelihood of success on the merits, but the test is whether or not the plaintiff has properly stated a claim. *Markowicz v.Johnson*, 206 F. Supp. 3d 158, 169 (D.D.C. 2016).

Defendant's argument that a claim arising out of the District of Columbia's CPPA must adhere to the heightened pleading standards required for fraud claims under Rule 9(b) is wrong. As this Court has previously clarified, "CPPA claims are not held to the heightened pleading standard of Rule 9(b), and because it is a remedial statue, the Act 'must be construed and applied liberally to promote its purpose." *Frese v. City Segway Tours of Wash., DC, LLC*, 249 F. Supp 3d 230, 235 (D.D.C. 2017) (*citing McMullen v. Synchrony Bank*, 164 F. Supp. 3d 77, 95 (D.D.C. 2016)). Thus, dismissal is appropriate only if the Court resolves all uncertainties in Plaintiff's favor and then finds that there are no facts upon which Plaintiff could prevail.

## ARGUMENT

## I.  Plaintiff's Well-Pleaded Claim is Not Preempted by the Federal Nutrition Labeling and Education Act.

The decision as to whether a federal law should "preempt or operate alongside state law is Congress's to make." *Sickle v. Torres Advanced Enter. Sols., LLC*, 884 F. 3d. 338, 346 (DC Cir. 2018). Thus, "congressional purpose is 'the ultimate touchstone in every preemption case.'" *Id.* (quoting *Wyeth v, Levine*, 555 U.S. 555, 565 (2009). Furthermore, Courts should initiate their analysis of the issue with the starting assumption that federal laws will not override the police powers of each State unless there is a "clear and manifest' intent of Congress." *Id.* (internal quotation and citation omitted).

4

A claim pursuant to state law based on misleading statements on the packaging and advertisements of a product can only be preempted by the FDCA if it imposes labeling requirements that are "not identical to" federal requirements. 21 U.S.C. § 343-1. Although the FDCA does not provide a private right of action, state laws are not preempted on the subject when its requirements parallel those of the FDCA. *See Florida Lime & Avocado Growers v. Paul*, 373 U.S. 132, 144 (1963) ("States have always possessed a legitimate interest 'in the protection of (their) people against fraud and deception in the sale of food products' at retail markets within their borders." (citing cases)); *Hesano v. Iovate Health Scis., Inc.*, 2014 U.S. Dist. LEXIS 5924 *18 (S.D. Cal. Jan. 15, 2014) ("The FDCA therefore does not preclude states from adopting their own parallel laws and adopting a different mechanism for enforcing those laws"); *see also* 21 U.S.C. § 343-1(a).

### A. Federal Labeling Requirements Do Not Regulate—And Do Not Preempt— the Misrepresentations on Defendant's Websites.

Misstatements or omissions that a manufacturer makes about its product on a website, which are not included in product labels or packaging, are not preempted by the FDCA. *Sciortino v. PepsiCo, Inc.*, 108 F. Supp. 3d 780, 807 (N.D. Cal. 2015). Similarly, the NLEA, as its name suggests, regulates and preempts only *labeling* requirements. 21 U.S.C. § 343-1(a)-(e).

Here, the Complaint alleges numerous false and misleading statements made only on Defendant's websites:

(a) One Bar is "the perfect healthy meal replacement bar." Compl. ¶ 11.

(b) One Bars are "the perfect reward for any workout, whether it's in the weight room or in the board room." *Id.* ¶ 12.

(c) One Bars are "too-good-to-be-true." *Id.* ¶ 11.

(d) One Bar is "the protein bar you didn't think was possible." *Id.* ¶ 11.

(e) "One Bar goes  great with: the office, the gym, just because." *Id.* 14.

(f) Defendant also suggests that One Bars are certified by NSF, "The Public Health and Safety Organization," which "helps establish credibility and provides the consumer assurance through the (sic) vigorous laboratory testing" and "certifies that what is on the labels is in the [One Bars.]" *Id.* ¶ 14.

All of these statements are materially misleading because they are either predicated on falsehoods about One Bar's sugar content or are intended to reinforce Defendant's claims about the sugar content of the One Bars. But none of these misrepresentations are even arguably preempted because they are not repeated on One Brands labels and they do not include federally-required labeling statements. Moreover, Plaintiff is not suing because these statements violate the NLEA or FDCA, but only because the statements are deceptive, false, and misleading in violation of the DCCPPA.

**B.     Plaintiff is not required to allege strict adherence to FDA Testing regulation at the Pleading Stage.**

Defendant's proffered pleading requirements exceed those required in the motion to dismiss stage. Nowhere in Plaintiff's complaint does she attempt to challenge or establish any requirement for nutritional labeling. Plaintiff does not allege that Defendant must calculate the amount of sugar using a method other than what is § 101.9(g). The CPPA is neither intended, nor now used by Plaintiff, to contravene labeling methodology promulgated by Congress. Instead, Plaintiff alleges, and supports with evidence of her own independent testing, that statements made on the front packaging of Defendant's product as well as on Defendant's website mislead reasonable consumers to believe that the sugar content contained in the product is not greater than 1 gram. Compl. ¶ 11-16. Plaintiff's allegations are sufficient to demonstrate the plausibility of her claims.

A finding for Plaintiff at the pleading stage would not "interfere with" or run "contrary to the laws of Congress, made in pursuant to the Constitution." In denying Defendant's Motion to Dismiss, the Court will not "directly or indirectly" alter any requirements for nutritional labeling. Any changes to Defendant's labeling will only be effectuated through the ultimate resolution of the merits of Plaintiff's claim, which is far down the road. Having presented evidence sufficient to demonstrate the plausibility of her claims, Plaintiff should be granted the opportunity to conduct discovery and offer evidence in support of her claim. That plaintiff has not alleged compliance with the labeling methodology required by the FDCA is an issue that goes to the merits of the litigation, not the pleadings.

Defendant's assertion that "every district court considering this issue…" has found any other method preempted is inaccurate. Def.'s Brief at 7. In *Gubala v. CVS Pharm.*, the Northern District of Illinois determined that "[w]hether independent testing along the lines of § 101.9(g)(2) confirms Plaintiff's claim of overstated protein content is an issue of proof, and Plaintiff does not need to prove his case at the pleading stage of the case." 2016 U.S. Dist. LEXIS 32759, *27 (N.D. Ill. Mar. 15, 2016); *In re Herbal Supplements Mktg. & Sales Practices Litig.*, 2017 U.S. Dist. LEXIS 76207 *47 (N.D. Ill. May 19, 2017), the court found that the defendants "free to challenge the efficacy of [the] testing later in the litigation, but at the pleading stage, the [New York State Attorney General] testing [was] sufficient factual support for Plaintiffs' claims." *Id*. In *Cytosport, Inc.*, another court similarly determined that plaintiff had made no allegations that it had adhered to the twelve-subsample methodology required of Defendant. 2015 U.S. Dist. LEXIS 110447, (S.D. Cal. Aug. 19, 2015). Regardless, the Court denied defendant's motion to dismiss, because it was clear from the complaint that plaintiff's position was that defendant's labeling violated the FDCA, and that this was supported by

independent testing, and thus "did not have to allege compliance with the procedures in §
101.9(g)." *Id.* at *8. Similarly, in *Smith v. Allmax Nutrition, Inc.*, the court advised the partiers
that "while the Court finds that pleading the 12-sample methodology is not required to survive a
motion to dismiss, any adjudication of the claim's merits other an than by the 12-sample
methodology as set forth in section 101.9(g) would be preempted by the FDA." 2015 U.S. Dist.
LEXIS 1717897 *22-23 n. 1 (E.D. Cal. Dec. 24, 2015).. As in the cases cited above, the Court
should reject resolution of merits questions at the pleading stage.

Here, Plaintiff has pleaded that she had a laboratory test two samples of Defendant's One
Bars and one sample of a competing protein bar that also purported to contain no more than one
gram of sugar. Compl. ¶ 17. The testing found that Defendant's bars contained 900% to 1600%
more sugar than Defendant represents on its website and its packaging. *Id.* The same laboratory
found that the competing protein bar contained less than one gram of sugar. *Id.*

Defendant's position would be understandable if Plaintiff's testing had found, for
example, two grams of sugar instead of the one gram promoted in Defendant's advertising. But
Plaintiff's testing found 16 grams of sugar in one sample and nine in the other. (To put these
numbers in context, a Snickers bar contains 20 grams of sugar.) Plaintiff's testing results reveal
sugar levels that are orders of magnitude higher than Defendant's representations suggest and are
a more than sufficient to plausibly infer that the allegations in the Complaint are true.

By alleging that her own independent results demonstrate higher sugar content levels than
marketed by Defendant, Plaintiff has pled factual allegations "enough to raise a right to relief
above the speculative level." *Advance Am., Cash Advance Ctrs., Inc.*, 257 D. Supp. 3d, at 64.
(citing *Twombly*, 550 U.S. at 555). As evidenced above, the type of factual allegations raised by
Plaintiff allow a court to "infer that tests conducted in compliance with the 12-sample

methodology would support Plaintiff's allegations that the Product is mislabeled." *Smith*, 2015 U.S. Dist. LEXIS 171897 at *22; *see also Clay Ctrs., Inc. v. FDIC*, 257 F. Supp. 3d 56, 64 (D.D.C. 2017) ("The plausibility requirement is <u>not</u> a probability requirement"); *Gubala*, 2016 U.S. Dist. LEXIS 32759, at *26 ("On a motion to dismiss for failure to state a claim, the complaint must overcome 'two-easy-to-clear hurdles'…"). Having met her burden at this stage, Defendant's motion should be denied.

The cases Defendant relies on to assert that Plaintiff's claims are preempted can be easily distinguished. Defendant relies in great part on *In re: Whole Foods Market, Inc.*, 163 F. Supp. 3d 385 (W. D. Tex. 2016). Def.'s Brief at 2, 7, 8, 9. In *Whole Foods*, plaintiffs alleged that defendant had misrepresented the amount of sugar contained in the federally-required nutrition facts label on the back of its product. *Whole Foods*, 163 F. Supp at 387. Additionally, plaintiffs did not allege that they conducted any independent examination and instead relied solely on tests conducted by *Consumer Report* magazines. *Id.* In the present case, Plaintiff does direct her claim to the nutrition facts label of One Bar packages, and Plaintiff has performed independent testing. As in other cases cited herein in which courts have denied motions to dismiss, Plaintiffs have alleged independent testing conducted on two One Bar products that demonstrate higher sugar content than claimed on the front of the product and in online advertisements. Finally, unlike in the present case, the plaintiffs in *Whole Foods* had been afforded months of discovery, at which point they had continuously failed to comply with the methodology requirements of the FDCA. *Whole Foods*, 163 F. Supp. 3d at 394.

### C.    Plaintiff has standing to challenge misrepresentations about One Bar's certification by "NSF"

*1.    Background on Tester standing under the DCCPPA*

In 1976, when the CPPA was enacted, the statute provided the Department of Consumer and Regulatory Affairs ("DCRA") the role of "principal consumer protection agency of the District of Columbia government." *See Margolis v. U-Haul Int'l, Inc.* 2009 D.C. Super. LEXIS 8 *15-17, (D.C. Super. Ct. 2009) (quoting § 28-3902 (a)). The statute contemplated that the DCRA would have broad authority to investigate unlawful trade practices and adjudicate consumer complaints. *Id.*

Beginning in 1994, as the result of budget shortfalls, the City Council indefinitely suspended the DCRA's enforcement authority. *Id.* In April 1999, the Antitrust, Trade Regulation and Consumer Affairs Section of the D.C. Bar published a report that recommended changes in the consumer protection enforcement mechanism. *Id*; see also *Grayson v. AT&T Corp.*, 15 A. 3d 219, 240 (D.C. 2011).[1] That report cited "critical shortfalls" in the District's consumer protection system and noted that "[s]uspension of DCRA's authority removed the primary mechanism for halting unlawful trade practices, and prohibited D.C.'s consumer protection agency from enforcing the law," and that "public interest organizations, and the bar do not have an enumerated authority to halt illegal practices through injunctive relief and disgorgement of ill-gotten gain in the public interest." *Id.* (quoting Bar Report). The report recommended that public interest organizations and the private bar "be statutorily enabled to seek injunctive relief and disgorgement of illegal proceeds." *Id.* (quoting Bar Report).

Following issuance of the Bar Report, the City Council amended the CPPA in late 2000 (effective 2001). *See Margolis*, 2009 D.C. Super. LEXIS at *15-17. The changes included permitting a "person" (as opposed to a "consumer") to bring a case in court and eliminating the

---

[1] Citing Carl Messineo, *et al.*, Consumer Protection in the District of Columbia Following the Suspension of the Consumer Protection Procedures Act: Report with Recommendations by the Antitrust, Trade Regulation, and Consumer Affairs Section of the D.C. Bar, April 1999) (hereinafter "Bar Report").

requirement that such a lawsuit be filed by someone who "suffers any damage as a result of the use or employment by any person of a trade practice in violation of a law of the district of Columbia within the jurisdiction of the Department." Compare D.C. Code § 28-3905 (1981 Ed.) with D.C. Code § 28-3905 (k)(2001) (2001 Ed.); see also Margolis, 2009 D.C. Super. LEXIS at *15-17 (detailing differences); *Grayson*, 15 A.3d at 236 (same). The District's 2000 budget act continued "defunding" DCRA consumer protection, demonstrating intent to place enforcement in private hands. See *Grayson*, 15 A.3d at 242.

On January 25, 2013, the D.C. Council enacted the Consumer Protection Amendment Act of 2011, which became effective on April 23, 2013. Among other things, the amendments added provisions allowing "testers" to bring claims on behalf of the general public:

> (B) An individual may, on behalf of that individual, or on behalf of both the individual and the general public, bring an action seeking relief from the use of a trade practice in violation of a law of the District when that trade practice involves consumer goods or services that the individual purchased or received in order to test or evaluate qualities pertaining to use for personal, household, or family purposes.

D.C. Code § 28-3905(k)(1)(B). The amendments also added the following section specifying that the CPPA establishes an enforceable right to truthful information from merchants:

> (c) This chapter shall be construed and applied liberally to promote its purpose. This chapter establishes an enforceable right to truthful information from merchants about consumer goods and services that are or would be purchased, leased, or received in the District of Columbia.

D.C. Code § 28-3901(c). The statute was deliberately modeled on other statutes with tester standing provisions upheld by the Supreme Court, which remain good law.

>   2.   *Plaintiff has adequately pleaded an injury-in-fact.*

For the purposes of establishing Article III standing, an "injury-in-fact" can be demonstrated, in part, by an "invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *United States v. Windsor*, 133 S. Ct. 2675, 2685 (2013). In the District of Columbia, court have found that, under Article III, "one manifestation of injury in fact is the violation of legal rights created by statute." *Grayson*, 15 A. 3d at 234 (D.C. 2011).

Plaintiff alleges that Defendant harmed her and other District consumers similarly situated by misleading them as to the health benefits of the product. The CPPA establishes "an enforceable right to truthful information from merchants about consumer goods and services…" D.C. Code § 28-3901(c). Even if Plaintiff's injury derived solely from a violation of her statutory legal right to truthful information as created by the CPPA, she would still properly allege an injury-in-fact. *Grayson*, 15 A.3d at 248-49 ("[I]n terms of standing in this case, Mr. Grayson's injury is derived solely from a violation of an invasion of his statutory legal rights created by the CPPA.") (citing, among other authorities, *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372 (1982); *Zuckman v. Monster Bev. Corp.*, 2016 D.C. Super. LEXIS 10 (D.C. Super. Ct. Aug. 12, 2016) (finding that defendant's alleged violation of plaintiff's statutory right to truthful information concerning energy drinks alleged sufficiently concrete harms to satisfy the "injury-in-fact requirement of Article III standing"); *Campbell v. Nat'l Union Fire Ins. Co.*, 130 F. Supp. 3d 236, 252 (D.D.C. 2015) (collecting authority for the proposition that "unauthorized charges and allegedly material misrepresentations about the program constitute injuries in fact for

standing purposes."). Here, Plaintiff adequately alleges an injury-in-fact because she contends that, as a result of the deceptive trade practices of One Brands, Plaintiff and residents of D.C. have been deprived of truthful information regarding the health benefits of One Bar as part of a low sugar diet.

### D. Plaintiff's claim under the DCCPPA is well pleaded.

Plaintiff alleges Defendant made misrepresentations and omissions about the qualities and sugar-content of the Chocolate Brownie One Bar and Birthday Cake One Bar. Compl. at ¶12, 13, 17. Defendant chose to advertise One Bars as "the perfect healthy meal replacement bar" with high protein and low sugar content. Compl. at ¶ 11. These misrepresentations violate the CPPA. *See* Compl., at ¶¶ 28-34.

The CPPA is a remedial statute that must "be construed and applied liberally to promote its purpose." *Pearson v. Chung*, 961 A.2d 1067, 1075 (D.C. 2008). The purpose of the CPPA, D.C. Code § 28-3901 *et seq*., is to "(1) assure that a just mechanism exists to remedy all improper trade practices and deter the continuing use of such practices; (2) promote, through effective enforcement, fair business practices throughout the community; and (3) educate consumers to demand high standards and seek proper redress of grievances." D.C. § 28-3901(b). To that extent, as described above *supra* PAGE, the CPPA "establishes an enforceable right to truthful information" about consumer goods. Despite Defendant's effort to mischaracterize both the CPPA and Plaintiff's claim, the CPPA states that:

It shall be a violation of this chapter, *whether or not any consumer is in fact misled, deceived or damaged thereby, for any person to*:

(a)    represent that goods or services have a source, sponsorship, approval, certification, accessories, characteristics, ingredients, uses, benefits, or quantities that they do not have; . . .

13

(d)      represent that goods or services are of particular standard, quality, grade, style, or model, if in fact they are of another; . . .

(e)      misrepresent as to a material fact which has a tendency to mislead; . . .

(f)      fail to state a material fact if such failure tends to mislead;

(f-1)   [u]se innuendo or ambiguity as to a material fact, which has a tendency to mislead; . . . [or]

(h)      advertise or offer goods or services without the intent to sell them or without the intent to sell them as advertised or offered.

D.C. Code § 3904 (emphasis added).

To prove a violation of § 3904 of the CPPA, Plaintiff need only prove "misrepresentation or omission of a material fact that has a "tendency" or "tends to" mislead." *Id.*; *Dahlgren v. Audiovox Communs. Corp.*, 2010 D.C. Super. LEXIS 9 at *25 (D.C. Super. Ct. July 2, 2010). Plaintiff need not allege either reliance or damages in order to successfully plead a violation of the CPPA in her capacity as a tester in District of Columbia. *Dahlgren*, 2010 D.C. Super. LEXIS 9 at *25 ([plaintiff] need not prove reliance, since she need not prove that the misrepresentation misled or deceived the consumer").

As alleged in Plaintiff's Complaint, One Brands failed to state material facts as to the product's contents by omitting that the product contains sugar contained above the advertised amount, misrepresented as to a material fact in its claims of "low in sugar," misrepresented One Bar's participation in the NSF Certified for Sport Program, sells consumer goods in a manner not consistent with the requirements of law, and is otherwise misleading. Compl. at ¶ 30(a-f).

14

Plaintiff and Defendant agree that courts judge CPPA claims from the perspective of an objectively reasonable consumer. *See* Def.'s Br. at 11. However, the parties diverge on when this determination is ripe. According to Defendant, Plaintiff cannot plead that the Defendant's claims regarding NSF-certification would mislead a reasonable consumer. *Id.* However, this analysis of "likelihood to mislead" is one that should be decided by a trier of fact at trial. Plaintiff has sufficiently alleged that "One Brands represents that it participates in the 'NSF Certified for Sport Program'" Compl. at ¶ 16. Whether a reasonable consumer would encounter this language and thus interpret it to suggest that One Bars are certified by the NSF is a fact-specific inquiry. Because Plaintiff has met the requisite pleading requirements by offering factual allegations to demonstrate the plausibility of her claims, this Court should deny Defendant's request to dismiss Plaintiff's claim.

## CONCLUSION

For the foregoing reasons, Defendant's motion should be denied in its entirety. Should the Court find any deficiencies in the pleadings, Plaintiff respectfully requests leave to amend. Leave to amend a complaint under Rule 15(a) "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). Absent "undue delay, bad faith, undue prejudice to the opposing party, repeated failure to cure deficiencies, or futility," leave to amend should not be denied. *McFadden v. Wash. Metro. Area Transit Auth.*, 168 F. Supp. 3d 100, 105 (D.D.C. 2016) (internal quotations and citations omitted). The rationale for this perspective is that if the "underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Id.* (internal quotation and citation omitted).[2]

---

[2] Here, there have been no repeated failures to cure deficiencies. And there is no possibility of futility here: should the Court require that the Plaintiff amend her complaint, in the unlikely event that additional laboratory testing undercuts Plaintiff's allegations, Plaintiff will not file an

Dated: September 28, 2018

Respectfully submitted,

Migliaccio & Rathod LLP

/s/ Nicholas A. Migliaccio
Nicholas A. Migliaccio, Esq.,
(Bar No. 848366)
Jason S. Rathod
(Bar No. 1000882)
Esfand Y. Nafisi
412 H St., NE
Washington, DC 20002
(202) 470-3520 (Tel.)
(202) 800-2730 (Fax)
nmigliaccio@classlawdc.com

---

amended complaint. If Plaintiff does file an amended complaint, it will not result in an undue delay. *See Harrison v. Rubin*, 174 F.3d 249, 252 (D.C. Cir. 1999) (where an amendment would "do no more than clarify legal theories or make technical corrections, we have consistently held that delay, without a showing of prejudice, is not a sufficient ground for denying the motion") (citing *Material Supply Int'l, Inc. v. Sunmatch Indus. Co.*, 146 F.3d 983, 991 (D.C. Cir. 1998). Similarly, an amendment would not cause undue prejudice, which "is not mere harm to the non-movant but a denial of the opportunity to present facts or evidence which would have been offered had the amendment been timely." *City of Moundridge v. Exxon Mobil Corp.*, 250 F.R.D. 1, 6 (D.D.C. 2008) (internal alterations, citations, and quotations omitted). Accordingly, there is no basis to deny leave to amend here.

**CERTIFICATE OF SERVICE**

I hereby certify that, on September 28, 2018, this document was served on all counsel of record pursuant to the Court's electronic filing system.

/s/ Nicholas A. Migliaccio
Nicholas A. Migliaccio